46 P.3d 510

**Harold K. HOWARD and Zola Howard, husband and wife, Plaintiffs–Appellants,**

v.

**OREGON MUTUAL INSURANCE COM-PANY, a foreign corporation, De-fendant–Respondent.**

No. 26858.

Supreme Court of Idaho,
Boise, January 2002 Term.

April 16, 2002.

Rehearing Denied May 17, 2002.

Gordon Law Offices, Chartered, Boise, for appellants. Bruce S. Bistline argued.

Brady Law, Chartered, Boise, for respondent. Michael G. Brady argued.

KIDWELL, Justice.

This is a dispute regarding the interpretation of uninsured/underinsured motorists provisions in an insurance policy issued by Oregon Mutual Insurance Company (Oregon Mutual) to Harold and Zola Howard (the Howards). The Howards brought an action against Oregon Mutual seeking a declaratory judgment and damages for breach of contract and bad faith. The district court granted summary judgment in favor of Oregon Mutual, finding that the policy's uninsured/underinsured motorists offset provisions unambiguously precluded recovery by the Howards. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The Howards were insured under an auto policy issued by the defendant, Oregon Mu-

tual. The Howards' policy provided property damage and bodily injury liability coverage with a combined single limit of $300,000.00 per occurrence, medical payment coverage of $5,000.00 per person, and uninsured/underinsured motorists (UIM) coverage with a limit of $50,000.00 per occurrence. On October 19, 1996, Mr. Howard was driving his insured vehicle near Cascade, Idaho, when a vehicle driven by Cindy Pearce crossed the centerline and collided head-on with Mr. Howard's vehicle, injuring Mr. Howard. Pearce was insured under an auto liability policy issued by American Concepts Insurance. American Concepts paid the policy limit of $50,000.00 to the Howards.

The Howards then made a demand upon Oregon Mutual for payment under their policy's UIM coverage. The Howards claimed that they had sustained more than $100,000.00 in damages as a result of the accident and that they were entitled to payment of the full $50,000.00 limit of their UIM coverage. Oregon Mutual refused to pay on two grounds. It asserted that the Pearce vehicle was not an underinsured vehicle as defined in the Howards' policy and that, even if the Pearce vehicle was an underinsured vehicle, the relevant offset provision of the policy relieved Oregon Mutual of any duty to pay. The policy language will be set forth in the analysis section below.

The Howards filed this action seeking a declaratory judgment that they were entitled to recover the full $50,000.00 limit of their UIM coverage. They also sought damages for breach of contract and for insurance bad faith. The Howards moved for partial summary judgment regarding their declaratory judgment claim, and the district court denied the motion. The Howards filed a motion for reconsideration, and the district court reaffirmed its denial of their motion for partial summary judgment. Based upon the district court's denial of the Howards' motion and its indication that the policy unambiguously precluded coverage as a matter of law, both parties agreed that partial summary judgment should be entered in favor of Oregon Mutual, dismissing the Howards' declaratory judgment claim. Accordingly, the district court entered partial summary judgment for

Oregon Mutual, dismissing the declaratory judgment claim. The parties further agreed that, in light of the district court's grant of summary judgment on the declaratory judgment claim, the Howards could not prevail upon their claims for breach of contract and insurance bad faith. The district court granted summary judgment dismissing those claims as well. The Howards have appealed as to all three of their claims.

## II.

## STANDARD OF REVIEW

■■■ On appeal from the grant of a motion for summary judgment, this Court employs the same standard to be used by the district court originally ruling on the motion. *Kelso v. Lance,* 134 Idaho 373, 374–75, 3 P.3d 51, 52–53 (2000). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts and draws all reasonable inferences and conclusions supported by the record in favor of the nonmoving party. *Kelso,* 134 Idaho at 375, 3 P.3d at 53. If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion must be denied. *Id.*

■■■ As to issues of law, this Court exercises free review of the trial court's decision. *Bouten Constr. Co. v. H.F. Magnuson Co.,* 133 Idaho 756, 760, 992 P.2d 751, 755 (1999).

## III.

## ANALYSIS

The relevant policy provisions that were in place at the time of the accident are contained in the "AMENDATORY UNINSURED/UNDERINSURED MOTORISTS COVERAGE" portion of the Howards' policy. That portion of the policy replaces the original Part III of the policy and provides, in relevant part:

> Part III—Uninsured/Underinsured Motorists Coverage

> The Company will pay **damages** for **bodily injury** which the **insured** shall be legally entitled to recover from the owner or operator of an **uninsured/underinsured motor vehicle**....

> The Company will pay under this coverage only after the limits of liability under any applicable **bodily injury** liability policies or bonds have been used up in payments or settlements or judgments.

> ....

> Definitions Used In This Section Only

> ....

> 9. **"Uninsured/Underinsured motor vehicle"** means a land motor vehicle or **trailer** which is:

> ....

> d. insured by bodily injury policies or bonds at the time of the **auto accident,** but the sum of the limits of liability under all such **bodily injury** liability policies or bonds applicable at the time of the accident is less than the applicable limits of liability under this insurance....

> ....

> LIMITS OF LIABILITY
> SPLIT LIMIT
> The limit of liability shown in the Declarations for "each person" for this coverage is the Company's maximum limit of liability for all **damages** for **bodily injury** sustained by any one person in any one **auto accident.** Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured/Underinsured Motorist Coverage is the Company's maximum limit of liability for all **damages** for **bodily injury** resulting from any one **auto accident.**

> This is the most the Company will pay regardless of the number of insured persons, claims made, vehicles or premiums shown in the declarations, vehicles involved in the **auto accident** or policies issued to the **insured** by the Company.
> SINGLE LIMIT
> The limit of liability shown in the declarations for this coverage is the Compa-

ny's maximum limit of liability for all **damages** resulting from any one accident. This is the most the Company will pay regardless of the number of insured persons, claims made, vehicles or premiums shown in the declarations or vehicles involved in the **auto accident.**

OFFSET

Any amounts otherwise payable for damages under either SPLIT or SINGLE LIMIT which the **insured** is legally entitled to recover from the owner or operator of an **uninsured/underinsured motor vehicle** because of **bodily injury** caused by an **auto accident** shall be reduced by:

1. All sums paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy. . . .

### A. The Howards' Policy Unambiguously Precludes Recovery By The Howards Under Their UIM Coverage.

■ The Howards argue that the "OFFSET" provision in their UIM coverage is ambiguous and that, construing the provision in their favor, they are entitled to recover. Oregon Mutual argues that the offset provision unambiguously precludes recovery by the Howards in this case. Oregon Mutual also argues, as an additional issue raised on appeal, that the Pearce vehicle was not an underinsured motor vehicle under the policy definition; therefore, Oregon Mutual argues, the Howards cannot recover under any interpretation of the offset provision. Because we hold that the offset provision precludes the Howards' claim and affirm summary judgment in favor of Oregon Mutual on that basis, it is unnecessary to address the issue of whether the Pearce vehicle meets the definition of an underinsured vehicle.

The offset provision of the UIM coverage provides:

OFFSET

Any amounts otherwise payable for damages under either SPLIT or SINGLE LIMIT *which the insured is legally entitled to recover from the owner or operator of an **uninsured/underinsured motor ve-***

*hicle because of **bodily injury** caused by an **auto accident*** shall be reduced by:

1. All sums paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. . . .

(boldface type original; italics added). The italicized language is at the heart of this dispute. The offset provision ·was clearly designed to reduce *something* by the amount of money received from an underinsured motorist or their insurance company. The Howards urge an interpretation of the offset provision that would define Oregon Mutual's duty to pay by reducing the total damages that the Howards are legally entitled to recover from Pearce—allegedly in excess of $100,000.00 in this case—by the $50,000.00 received from Pearce's insurer, leaving the entire $50,000.00 UIM policy limit available to the Howards. Oregon Mutual argues that the district court correctly interpreted the offset provision to define Oregon Mutual's duty to pay by reducing the $50,000.00 UIM policy limits by the $50,000.00 received from Pearce's insurer, leaving no remaining policy limits available to the Howards.

■ Where the provisions of an insurance contract are not against public policy, the contract provisions control. *See Featherston v. Allstate Ins. Co.,* 125 Idaho 840, 843, 875 P.2d 937, 940 (1994); *Nationwide Mut. Ins. Co. v. Scarlett,* 116 Idaho 820, 822, 780 P.2d 142, 144 (1989). There being no public policy regarding UIM coverage, the provisions of the Howards' policy control. *Scarlett,* 116 Idaho at 822, 780 P.2d at 144. However, insurance contracts are adhesion contracts, not typically subject to negotiation between the parties. *Mutual of Enumclaw Ins. Co. v. Roberts,* 128 Idaho 232, 235, 912 P.2d 119, 122 (1996). Consequently, all ambiguities in an insurance policy are to be resolved against the insurer, and a court must interpret the provisions consistently with what a reasonable person in the insured's position would have understood the language to mean. *City of Boise v. Planet Ins. Co.,* 126 Idaho 51, 55, 878 P.2d 750, 754 (1994); *Foremost Ins. Co. v. Putzier,* 102 Idaho 138, 142, 627 P.2d 317, 321 (1981).

The determination of whether a policy of insurance is ambiguous is a question of law for the court. *Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999). An insurance policy will be found ambiguous if it is reasonably subject to conflicting interpretations. *Id.* at 432, 987 P.2d. at 1047. "Unless a contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Mutual of Enumclaw v. Box*, 127 Idaho 851, 853, 908 P.2d 153, 155 (1995).

Oregon Mutual relies on *Box* to support its interpretation of the contract language. *Id.* The language of the Howards' offset provision, except for the italicized phrase, is substantially the same as the language at issue in *Box.* In *Box*, the relevant offset language read:

> Any amounts otherwise payable for damages under this coverage will be reduced by:
>
> a. All sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. . . .

*Id.* at 853, 908 P.2d at 155. This Court found that the offset language in *Box* unambiguously provided that payments from the tortfeasor applied to reduce the amount payable by the company under the relevant policy limits, not to reduce the insured's damages. *Id.* at 854, 908 P.2d at 156. The phrase "under either SPLIT or SINGLE LIMIT," contained in the Howards' policy, is merely an alternative way of stating the phrase "under this coverage," contained in the policy in *Box.* Thus, the only issue that remains is whether the addition of the phrase, "which the insured is legally entitled to recover from the owner or operator of an uninsured/underinsured motor vehicle because of bodily injury caused by an auto accident," made the offset provision in the Howards' policy ambiguous.

The UIM coverage contained in the Howards' policy begins with a general insuring promise:

> Part III—Uninsured/Underinsured Motorists Coverage

> The Company will pay damages for bodily injury *which the insured shall be legally entitled to recover from the owner or operator of an uninsured/underinsured motor vehicle . . . .*

(emphasis added). Shortly afterward, the promise to pay is conditioned:

> The Company will pay under this coverage only after the limits of liability under any applicable bodily injury liability policies or bonds have been used up in payments or settlements or judgments.

Next, the document clarifies the promise by defining "uninsured/underinsured motor vehicle" for the purposes of the coverage. Then, the document further conditions the promise to pay, in the LIMITS OF LIABILITY section, re-printed above. That section conditions the promise to pay by limiting it to the limits of liability shown on the declarations page ($50,000.00) and by providing that coverages may not be stacked. Finally, the document further conditions the promise to repay by way of the offset provision, re-printed above. The overall structure of the UIM coverage document, then, provides a general promise to pay, which is subsequently conditioned and curtailed by other provisions, to arrive at a limited, narrow definition of Oregon Mutual's contractual duties.

When read in the context of this overall structure, the offset provision unambiguously provides that any amounts that the insurer is obligated to pay under the UIM coverage, phrased as "under either SPLIT or SINGLE LIMIT," must be reduced by amounts received from the tortfeasor or the tortfeasor's insurer. This provision is consistent with the policy's earlier condition that "the Company will pay under this coverage only after the limits of liability under any applicable bodily injury liability policies or bonds have been used up in payments or settlements or judgments." Additionally, the use of the phrase "which the insured is legally entitled to recover from the owner or operator of an uninsured/underinsured motor vehicle because of bodily injury caused by an auto accident" simply ties the offset provision to the identical language contained in the general insuring promise near the top of the UIM coverage page, and it makes it abundantly clear

that the offset provision applies only to the UIM policy limits.

Consequently, we hold that the offset provision unambiguously provides that the amounts received from Pearce's insurer are applied to reduce the amount Oregon Mutual would otherwise be obligated to pay under the UIM policy limits, as opposed to reducing the total amount of damages the Howards suffered. Oregon Mutual's obligation under the UIM coverage was therefore reduced to zero. We affirm the district court's grant of summary judgment in favor of Oregon Mutual.

## B. The District Court Did Not Abuse Its Discretion In Striking The Affidavit Of The Howards' Expert On Summary Judgment.

The Howards sought to admit the opinion of a linguistics expert, who opined that the language of the Howards' policy was ambiguous. The district court struck the expert's affidavit, declining to give it consideration in ruling on the Howards' summary judgment motion. The Howards argue that this was an abuse of discretion. ·

The admissibility of expert testimony is a matter committed to the discretion of the trial court, and the court's ruling will not be overturned absent an abuse of that discretion. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50, 995 P.2d 816, 820 (2000). As noted above, the identification and resolution of ambiguity in an insurance policy are matters of law. The Idaho Rules of Evidence provide that an expert may be allowed to testify as to his or her opinion if his or her specialized knowledge "will assist the *trier of fact* to understand the evidence or to determine a *fact* in issue." I.R.E. 702 (emphasis added). Because the issues related to ambiguity before the trial judge were matters of law, the offered expert opinion was irrelevant, and there was no abuse of discretion in excluding the testimony.

## IV.

### ATTORNEY FEES ON APPEAL

Oregon Mutual seeks an award of attorney fees on appeal pursuant to I.C. § 41–1839(4). That section provides the authority for an award of attorney fees when a

court finds that the case was "brought, pursued, or defended frivolously, unreasonably or without foundation." It provides a basis for an award of attorney fees to either the insured or the insurer. *Slaathaug v. Allstate Ins. Co.*, 132 Idaho 705, 711, 979 P.2d 107, 113 (1999). Despite Oregon Mutual's arguments to the contrary, the Howards did not invite error or acquiesce in the district court's decision on the ambiguity issue. During the proceedings below, the district court twice made its view clear that the offset provision was not ambiguous and that the Howards were not entitled to summary judgment. The Howards conceded that, in the face of the district court's determination on the issue of ambiguity, there was nothing precluding the district court from entering summary judgment in favor of Oregon Mutual regarding that and all other issues in the case. The Howards then brought this appeal to challenge the district court's determination, arguing that the offset language was reasonably subject to more than one conflicting interpretation. We find that the Howards' appeal was not brought or pursued frivolously, unreasonably, or without foundation. Consequently, no attorney fees are awarded.

## V.

### CONCLUSION

The offset provision contained in the Howards' UIM coverage unambiguously provides that the policy limits are to be reduced by the amount received from Pearce's insurer. Consequently, the Howards' coverage was reduced to zero in this case, and summary judgment in favor of Oregon Mutual was appropriate. The district court's exclusion of the expert testimony offered by the Howards was not an abuse of discretion. The decision of the district court is affirmed. No attorney fees are awarded on appeal. Costs on appeal are awarded to Oregon Mutual.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN concur.